IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **PEGGY LOU HAMILTON** | * |
| | * |
| v. | *   Civil Case No. CCB-13-3003 |
| | * |
| **COMMISSIONER, SOCIAL SECURITY** | * |
| | * |

************

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014-01, the above-referenced case was referred to me to review the parties' dispositive cross-motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered the parties' cross-motions for summary judgment. ECF Nos. 15, 17. This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. Local R. 105.6 (D. Md. 2011). For the reasons set forth below, I recommend that the Commissioner's motion be granted and that Ms. Hamilton's motion be denied.

Ms. Hamilton applied for Disability Insurance Benefits on July 12, 2010, alleging a disability onset date of October 1, 2009.[1] (Tr. 186-92). Her claim was denied initially on October 29, 2010, and on reconsideration on April 7, 2011. (Tr. 139-42, 145-46). An Administrative Law Judge ("ALJ") held a hearing on June 21, 2012, (Tr. 26-65), and subsequently denied benefits to Ms. Hamilton in a written opinion, (Tr. 10-25). The Appeals Council declined review, (Tr. 1-7), making the ALJ's decision the final, reviewable decision of the agency.

---

[1] Ms. Hamilton had also filed a prior application for benefits, which was denied in 2008. (Tr. 127-36).

The ALJ found that Ms. Hamilton suffered from the severe impairments of obesity and cervical and lumbar degenerative disc disease. (Tr. 15). Despite these impairments, the ALJ concluded that Ms. Hamilton retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 416.967(b) except she can occasionally climb ramps and stairs, balance, kneel, crawl, stoop, and crouch; and can never climb ladders, ropes or scaffolds.

(Tr. 17). After considering testimony from a vocational expert ("VE"), the ALJ determined that Ms. Hamilton could perform her past relevant work as a laundry worker, nursing home cafeteria attendant, and fast food assistant manager, and that she was not therefore disabled. (Tr. 21).

Ms. Hamilton disagrees. She asserts two primary arguments in support of her appeal: (1) that the ALJ assigned inadequate weight to the opinions rendered by her treating physician, Dr. Hsu; and (2) that the ALJ erred in making an adverse credibility assessment. Each argument lacks merit.

Ms. Hamilton first argues that the ALJ erred by assigning too little weight to the opinions of her treating physician, Dr. Hsu. Pl. Mot. 9-13. Dr. Hsu issued three separate opinions in the record. First, on December 2, 2009, Dr. Hsu opined that Ms. Hamilton could only sit for one hour, stand for one hour, and walk for one hour during an eight hour workday, and could frequently lift/carry ten pounds. (Tr. 271-72). On September 2, 2011, citing MRI evidence as support, Dr. Hsu opined that Ms. Hamilton could sit for two hours total, stand/walk for one hour or less, and, while sitting, would have to get up and move around every 15 minutes for about 5 minutes before sitting again. (Tr. 495-500). Dr. Hsu further opined that Ms. Hamilton was moderately limited in her ability to use her upper extremities, and that she would likely be absent from work more than three times per month. *Id.* On April 3, 2012, Dr. Hsu issued a third opinion, stating that in an eight-hour workday, Ms. Hamilton could sit for one hour or less and stand for one hour or less, and was markedly limited in her ability to use her upper extremities.

(Tr. 599-606).

The objective evidence in this case includes a number of diagnostic images demonstrating mild to moderate degenerative changes in Ms. Hamilton's neck and back. *See* (Tr. 361-63) (MRIs on February 22, 2008 finding degenerative disc disease of the cervical spine with mild foraminal encroachment but with no stenosis, small left paracentral and foraminal herniation at L4-5 with an annular tear and some additional degenerative changes, and degenerative spondylosis toward the right side of the thoracic spine with no canal narrowing or disc herniation); (Tr. 324) (MRI on December 9, 2008 showing minor bulging disks in the cervical spine); (Tr. 309) (MRI on June 12, 2009, again finding minor bulging disks in the cervical spine); (Tr. 573-74) (MRI on February 28, 2011 indicating degenerative disc disease that was "slightly more pronounced compared to prior examination" and "mild canal stenosis" in the cervical spine); (Tr. 575-76) (MRI of lumbar spine on same date finding degenerative disc disease with "a central to left central disc extrusion which has slightly accelerated compared to prior examination"); (Tr. 570) (X-ray of the cervical spine on October 24, 2011 finding "loss of normal cervical lordosis" and "mild degenerative changes"); (Tr. 571) (X-ray of the thoracic spine on that same date finding "mild thoracic spondylosis" and "possible mild thoracic scoliosis"); and (Tr. 572) (X-ray of the lumbar spine on that same date indicating "pronounced disk space narrowing" and "degenerative disk disease").

However, this Court's role is not to reweigh the evidence or to substitute its judgment for that of the ALJ, but simply to adjudicate whether the ALJ's decision was supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Here, the ALJ's decision meets that standard.

A treating physician's opinion merits controlling weight only when two conditions are met: 1) it is well-supported by medically acceptable clinical and laboratory diagnostic

techniques; and 2) it is not inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2); *Craig,* 76 F.3d at 590 (refined by a later amendment to regulations as described by *Pittman v. Massanari*, 141 F. Supp. 2d 601, 608 (W.D.N.C. 2001)). As the ALJ noted, Dr. Hsu's treatment notes do not substantiate the level of disability suggested in the opinions. *See, e.g.* (Tr. 683-85) (Dr. Hsu treatment notes from June 19, 2012 describing back and neck pain as "moderate in severity" and prescribing conservative treatment); (Tr. 278-80) (Dr. Hsu treatment notes from November 24, 2009 noting that the severity of back pain is moderate and advising Ms. Hamilton to wear her back brace and cervical collar all the time); (Tr. 296-97) (Dr. Hsu notes indicating "able to return to work tomorrow" on June 15, 2009); *see also* (Tr. 553-54) (Union Hospital treatment notes from December 9, 2011 indicating back pain onset one week ago that was ongoing but mild and noting "no pain management" for back pain). The ALJ appropriately considered that discrepancy between the treatment notes and the medical opinions. *See Halverson v. Astrue*, 600 F.3d 922, 930 (8th Cir. 2010) (citing *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) and *Davidson v. Astrue*, 578 F.3d 838, 842 (8th Cir. 2009)) (finding that an ALJ properly discounted a treating physician's opinions where they were inconsistent with the medical evidence and with the doctor's own treatment notes); *see generally* 20 C.F.R. § 404.1527(c)(3) (stating that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). Moreover, while the MRI and X-ray findings certainly support the painful gait and tenderness described in Dr. Hsu's treatment notes, it is unclear that those mild to moderate objective findings support the relatively extreme limitations set forth in Dr. Hsu's opinions. In light of the substantial evidence undermining the allegations in the opinion forms, and the fact that this Court is not to reweigh the evidence considered by the ALJ, remand is unwarranted.

Finally, Ms. Hamilton asserts that the ALJ made an improper adverse credibility assessment regarding Ms. Hamilton's complaints of pain. Pl. Mot. 14-16. First, the ALJ cited the correct legal standard governing a credibility assessment. (Tr. 17). In addition, the ALJ provided a thorough explanation of the evidence upon which she relied in making the adverse credibility assessment, including the mild to moderate findings on objective testing, the conservative treatment of neck and back pain prescribed by Ms. Hamilton's physicians, and the relatively normal findings on consultative examination. (Tr. 18-19). In addition, the ALJ cited to Ms. Hamilton's activities of daily living and to the ALJ's observations of Ms. Hamilton's "apparent lack of discomfort" during the hearing. (Tr. 19). While Ms. Hamilton correctly observes that an ALJ cannot rely exclusively on a claimant's activities of daily living or on personal observation of the claimant to deny benefits, there is no error in considering those factors, in addition to other factors, in reaching a conclusion. *See, e.g., Soghoian v. Colvin,* 2014 WL 996530, at *10 (E.D. Va. March 13, 2014) ("Pursuant to 20 C.F.R. § 404.1529(c)(3)(i), claimant's daily activities are one of many factors that the ALJ considers in assessing claimant's credibility about purported symptoms and pain."); *id.*, at *11 ("An ALJ's specific credibility determinations should be afforded great weight especially when, as found here, the ALJ had the opportunity to observe plaintiff at a hearing and plaintiff's alleged disability rests almost exclusively on her subjective complaints of pain."); *Shively v. Heckler,* 739 F.2d 987, 989 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight."). Similarly, the ALJ made passing reference to the fact that Ms. Hamilton applied for unemployment benefits in 2010. (Tr. 20). However, to the extent that the ALJ relied upon that factor at all, it was one of many factors considered and did not provide the exclusive basis for the denial of benefits or the adverse credibility assessment. *See, e.g., Guthrie v. Coleman,*

2014 WL 2575318 (E.D.N.C. June 9, 2014) ("An application for unemployment benefits is one of many factors for an ALJ to consider in making a claimant's credibility determination.") (citing Memorandum of Chief Administrative Law Judge Frank A. Cristaudo, August 9, 2010, R.250 ("application for unemployment benefits is evidence that the ALJ must consider together with all of the medical and other evidence.")).  Because the ALJ supported her conclusions with substantial evidence, remand is not warranted.

CONCLUSION

For the reasons set forth above, I respectfully recommend that:

1. the Court GRANT Defendant's Motion for Summary Judgment (ECF No. 17); and

2. the Court DENY Plaintiff's Motion for Summary Judgment (ECF No. 15) and CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

Dated:  August 4, 2014                              /s/
                                                    Stephanie A. Gallagher
                                                    United States Magistrate Judge